Arthur H. DAVIS, Plaintiff–Appellant,

v.

REGIS COLLEGE, INC.,
Defendant–Appellee.

No. 90CA1712.

Colorado Court of Appeals,
Div. I.

Dec. 19, 1991.

Rehearing Denied Jan. 23, 1992.

Certiorari Denied June 8, 1992.

David S. Carroll, Denver, for plaintiff-appellant.

Hall & Evans, Daniel R. Satriana, Jr., Sean R. Gallagher, David J. Figuli, P.C., David J. Figuli, Denver, for defendant-appellee.

Opinion by Judge SMITH.

The plaintiff, Arthur Davis, appeals from the summary judgment dismissing his lawsuit against the defendant, Regis College. We affirm.

This case arises out of Davis' failure to pass a Regis nursing course. The following facts are not in dispute. Davis had been admitted to the nursing program and was enrolled in "Care of Children," a pediatrics course necessary to complete his junior year. This course involved, in addition to classroom work, a clinical work experience in which students were required to perform nursing duties at a local children's hospital, under the direct supervision of a Regis instructor. Satisfactory completion of the clinical experience was a prerequisite to receiving a passing grade in this course.

Davis was dismissed from the clinical portion of the course during the final week of the semester and was informed by his instructor that he would receive a failing clinical grade. Davis did, indeed, receive this grade, prompting him to receive a similar grade in the course. As a consequence, his cumulative grade point average fell below the required minimum. Although not dismissed from the nursing program, Davis was unable to advance to his senior year until such time as he had reestablished his cumulative grade point average and had retaken and passed the pediatrics course.

In response to Regis' denial of his request for a grade reconsideration, Davis initiated the lawsuit at issue here, alleging contract, tort, and constitutional claims for

relief. Both Davis and Regis moved for summary judgment prior to trial.

The gravamen of Davis' motion was that the undisputed facts established that the failing grade was merely a way of exercising arbitrary and malicious disciplinary action. Regis alleged, however, that Davis had failed to allege or present sufficient evidentiary facts to support a claim for relief. The basis for Regis' motion was that the issuance of the failing grade was an academic decision within the discretionary authority granted to educational institutions. The trial court essentially agreed and granted summary judgment in favor of Regis and against Davis on all of Davis' claims.

The sole issue on appeal is whether the trial court erred in granting summary judgment in favor of Regis.

Most courts have long refrained from interfering with the authority vested in school officials concerning matters of academic evaluation, including the awarding of grades and establishment of academic standards. *Gasper v. Bruton*, 513 F.2d 843 (10th Cir.1975). As noted by the court in *Gasper*:

> The courts are not equipped to review academic records based upon academic standards within the particular knowledge, experience, and expertise of academicians.

Hence, courts will rarely review an educational institution's evaluation of its students' academic performance. *Greenhill v. Bailey*, 519 F.2d 5 (8th Cir.1975).

■ Nonetheless, the relationship between a student and a university is grounded in contract, indicating some type of a reciprocal relationship. *See Russell v. Salve Regina College*, 649 F.Supp. 391 (D.R.I.1986) *rev'd on other grounds*, 499 U.S. ——, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991). Hence, courts in other jurisdictions have occasionally deviated from the noninterference position, but only when the evidence establishes that the academic decision of a private university was arbitrary, capricious, and made in bad faith. *Wilson v. Illinois Benedictine College*, 112 Ill.

App.3d 932, 68 Ill.Dec. 257, 445 N.E.2d 901 (1983).

■ Similar cases demonstrate that a student's interest in attending a public university is a constitutionally protected property right. Accordingly, such students may raise an actionable claim under 42 U.S.C. 1983 (1989) upon the presentation of evidence that the academic decision substantially departed from accepted academic norms and, thus, did not represent an exercise of professional judgment. *See Dillingham v. University of Colorado Board of Regents*, 790 P.2d 851 (Colo.App.1989). *See also Regents of the University of Michigan v. Ewing*, 474 U.S. 214, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985).

■ Here, Regis alleged that the undisputed facts established that Davis' failing grade was an academic decision. Moreover, Regis supported this allegation with responses to interrogatories showing that Davis' failing grade was based on personal observations, by both his instructor and his hospital preceptor, of Davis' clinical performance in handling patients and in responding to nursing problems. Thus, the burden was on Davis to present evidence which would bring the failing grade within one of the exceptions discussed above. For a number of reasons, we conclude that Davis failed to meet this burden.

First, Davis failed to present any evidence from which a reasonable jury could conclude that the giving of the failing grade was arbitrary, capricious, or done in bad faith. The record reveals that the evidence Davis submitted in support of his motion consisted primarily of his weekly clinical evaluations and the anecdotal notes of his Regis instructor. Contrary to Davis' assertions, the weekly evaluations disclose that Davis' clinical performance was inconsistent and exhibited a number of average and below average ratings. The instructor's anecdotal notes, moreover, illustrate specific instances in which Davis was unprepared, acted in an unsafe and unprofessional manner, and may have placed patients in danger. And, the notes demonstrate that his instructor's serious concerns regarding his clinical performance arose

well before the final week of the semester. Thus, Davis' evidence, if anything, appears to support Regis' allegation that the failing grade was, indeed, an academic decision.

 Second, there is no evidence that Regis, a private university is a "state actor," entitling Davis to bring a § 42 U.S.C. § 1983 claim. Davis alleged that state action was triggered by Regis' receipt of federal funds for research and energy assistance grants. However, this evidence, without other indicators of government involvement, is insufficient to establish state action. *See Blum v. Yaretsky,* 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982); *Rendall–Baker v. Kohn,* 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982).

Finally, even if we assume *arguendo* that Davis held a valid property interest in attending Regis, he presented no evidence which would demonstrate that Regis substantially departed from established academic norms in awarding him a failing grade. As previously noted, the weekly evaluations and anecdotal notes support a conclusion that the grade was based on Davis' inadequate clinical performance. Moreover, there is *no* evidence, as Davis asserts, that Regis failed to adhere to its own procedures in handling grade disputes. The admissions by Regis which Davis submitted with his motion merely show that Davis' requests of *nursing faculty* for a grade reconsideration were denied. There is no evidence, however, that Davis went beyond this step and sought to have an independent committee review the grade, the second step in the appeal procedure set forth in the Regis College Bulletin.

In sum, we conclude that Davis has failed to demonstrate the existence of any evidence from which a reasonable jury could find in his favor, that is, conclude that Davis' failing grade in the pediatrics course was given for any reason other than his unsatisfactory academic performance. Hence, despite strenuous argument, Davis failed to meet his burden to demonstrate that there was a genuine issue for trial. Under such circumstances, the trial court properly entered summary judgment in favor of Regis.

The judgment is affirmed.

PIERCE and DAVIDSON, JJ., concur.